United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN BALSLEY,

           Plaintiff,

v.

DELTA STAR EMPLOYEE STOCK OWNERSHIP PLAN, et al.,

           Defendants.

NO. C09-2952 TEH

<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>

      This matter comes before the Court on Defendants' motion to dismiss the breach of fiduciary duty cause of action from Plaintiff's first amended complaint. After carefully considering the parties' written arguments, as well as the statement of recent decision submitted by Plaintiff on December 9, 2009, the Court finds oral argument to be unnecessary and VACATES the hearing currently scheduled for December 14, 2009. The Court now GRANTS IN PART and DENIES IN PART Defendants' motion for the reasons discussed below.

**BACKGROUND**

      Plaintiff John Balsley brings this action against Defendants Delta Star Employee Stock Ownership Plan ("the Plan" or "ESOP"); the Trustees of the Plan; Delta Star, Inc.; and Jason Greene, chief financial officer and vice president of Delta Star, for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Balsley asserts two causes of action: one for breach of fiduciary duty under 29 U.S.C. §§ 1132(a)(2)-(3) [ERISA §§ 502(a)(2)-(3)] and a second for failure to comply with a request

for information under 29 U.S.C. § 1132(c) [ERISA § 502(c)]. Defendants' motion to dismiss challenges only the breach of fiduciary duty cause of action.

As to that claim, the first amended complaint contains the following allegations: Balsley worked for Delta Star for approximately twenty-seven years and, as of November 2007, his Plan account contained 58,910 shares of Delta Star common stock. Delta Star receives an annual valuation of its common stock as of December 31 of each year. As of December 31, 2006, each share was valued at $22.38. As of December 31, 2007, each share was valued over six times higher, at $142.45.

Acting on behalf of the other Defendants, Greene contacted Balsley on two occasions in October 2007 to offer a lump-sum buyback of the stock in Balsley's Plan account. The offer was based on the December 31, 2006 stock valuation. Greene indicated that cash may not be available in the future to buy back Balsley's shares, and that the lump-sum offer would not remain open. Balsley contends that both of these statements were material misrepresentations.

Balsley also contends that Greene was aware that Delta Star was having a record sales year in 2007, with record gross profits and net sales increasing by over fifty percent, and Greene therefore knew that the value of Delta Star's stock would increase in 2007. However, Greene did not share this information with Balsley. The Trustees were also aware of these income projections and were required, under the Plan, to consider available liquid assets before deciding to offer a lump-sum distribution. They, too, failed to convey this information to Balsley, who asserts that all of these omissions breached Defendants' fiduciary duties.

Based on Greene's representations on behalf of all Defendants, Balsley decided to accept the lump-sum offer. On November 26, 2007, he received a $1,318,422.15 distribution from the Plan. Balsley subsequently learned of the December 31, 2007 valuation of Delta Star common stock, under which his shares would have been worth $8,391,729.50. He asks for "appropriate equitable relief," including a "declaration that Balsley is entitled to have his account reinstated and is entitled to retroactively diversify his account at the earliest date he

United States District Court
For the Northern District of California

1 would have been eligible to diversify under the terms of the Plan or, in the alternative, a
2 declaration that Balsley is entitled" to a lump-sum distribution based on the December 31,
3 2007 valuation of Delta Star stock. First Am. Compl. ("FAC") at 19 (prayer for relief).

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation omitted). Courts may also disregard factual allegations that are controverted by any of the following: exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint and whose authenticity no party questions. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

The parties in this case do not dispute that the pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that "circumstances constituting fraud or mistake" be

3

stated "with particularity," apply to Balsley's breach of fiduciary duty claim. To satisfy these requirements, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). This generally requires plaintiffs to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988). However, where allegations rest on claims of omission, this standard is relaxed because, "[f]or example, a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987).

**DISCUSSION**

**I.     Section 502(a)(2) Standing**

The Court addresses Defendants' last argument first: that Balsley lacks standing to pursue a claim under ERISA § 502(a)(2), which "does not provide a remedy for individual injuries distinct from plan injuries" but "does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Bobert & Assocs., Inc.*, 128 S. Ct. 1020, 1026 (2008). In opposition, Balsley argues that his claim is actionable under § 502(a)(2) because he requests reinstatement to the Plan, which "is not an obvious detriment to the other [Plan] participants," Opp'n at 18, but this is inapposite. Balsley offers no argument as to how the alleged breach of fiduciary duty impaired the value of the Plan's assets; he does not, for instance, assert that Defendants' alleged conduct in any way decreased the value of Delta Star stock held in the Plan. Accordingly, the Court GRANTS Defendants' motion to dismiss Balsley's claim under § 502(a)(2). As Balsley observes, and as Defendants do not dispute, Balsley may continue to pursue his breach of fiduciary duty claim under § 502(a)(3).

4

**II. Claims Against the Plan**

Defendants do not contest the fiduciary status of any Defendants except for the Plan, and Defendants are correct that the Plan "cannot be sued for breach of fiduciary duty" because an ERISA plan cannot "act as a fiduciary with respect to its own assets." *Acosta v. Pac. Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991). A plan may nonetheless be named as a defendant "[t]o the extent that a plaintiff seeks 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,'" *id.* (quoting 29 U.S.C. § 1132(a)(1)(B) [ERISA § 502(a)(1)]), but Balsley brings suit under § 502(a)(3) and not § 502(a)(1). Moreover, Balsley's opposition contains no argument as to why the Plan should be allowed to remain as a named defendant in this case. Accordingly, the Court GRANTS Defendants' motion to dismiss the Plan from this action.

**III. Claims Against Defendants Greene, Trustees of Delta Star, and Delta Star**

The Court now turns to the substance of Balsley's allegations against the remaining Defendants. Under section 404 of ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). ERISA fiduciaries must also discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

As the Supreme Court explained in *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996), "to participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act 'solely in the interest of the participants and beneficiaries.'"

5

> Although the Supreme Court in *Varity* declined to reach the question of whether ERISA imposes a duty on fiduciaries to disclose truthful information on their own initiative, or in response to employee inquiries, 116 S. Ct. at 1075, [the Ninth Circuit] has previously held that a "fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir.1995) (citation omitted).

*Farr v. U.S. West Commc'ns, Inc.*, 151 F.3d 908, 914 (9th Cir. 1998).

### A.  Alleged Omissions

Balsley asserts two material omissions in the information presented to him: first, that "Delta Star was having a record sales year with record gross profits and net sales increasing by over 50 percent" and, second, that "[e]ven though the annual valuation had not yet been completed, based on the increased gross profits and revenue, Delta Star's stock had increased." FAC ¶ 81.  Defendants argue that these omission claims are not actionable because the omitted information relates only to the operations of the company in which the Plan invests and are therefore not "with respect to a plan," as required by ERISA.  29 U.S.C. § 1104(a)(1)(A).  However, the allegations in this case are similar to those in *Varity*, where the Supreme Court explained that "Varity *intentionally* connected its statements about [one of its subsidiaries'] financial health to statements it made about the future of benefits, so that its intended communication about the security of benefits was rendered materially misleading" and "an act of plan administration." *Varity Corp.*, 516 U.S. at 505.  When the allegations are viewed in a light most favorable to Balsley, as required at this stage of the proceedings, they suggest that Balsley was encouraged to accept the lump-sum distribution based on the December 31, 2006 stock valuation in part because Delta Star had a questionable financial future that might or would preclude a future lump-sum offer.  Thus, the allegations reflect an intentional connection between the lump-sum offer to Balsley and the financial outlook of Delta Star and are therefore actionable under ERISA.

In addition, contrary to Defendants' arguments, the allegations in the amended complaint sufficiently state a basis for Defendants' knowledge of the information allegedly

6

1  omitted. For example, Balsley alleges that Delta Star uses an electronic worksheet
2  application that tracks sales and projects revenue, and that Greene was aware of the projected
3  income and cash flows for 2007. FAC ¶¶ 36, 42. Balsley further alleges that the Board of
4  Trustees "is aware of and reviews the income projections that are prepared by the CFO of
5  Delta Star [i.e., Greene] and was aware of the income projection at the time that Balsley was
6  induced to receive a distribution of all of his stock in the Plan." *Id.* ¶ 43. It is more than
7  plausible, and perhaps even probable, that the company's chief financial officer and the
8  Board of Trustees of a stock plan that invested solely in the company would have knowledge
9  of the company's financial circumstances. In light of all of the above, Balsley's allegations
10 are sufficient to state a claim for breach of fiduciary duty based on omissions, and the Court
11 DENIES the motion to dismiss as to those claims.

### B. Alleged Affirmative Misrepresentations

Balsley also contends that Greene made two material misrepresentations: that "[c]ash may not be available in the future to buy Balsley's shares from the ESOP" and that "[t]he opportunity to cash in his shares of Delta Star common stock from his account under the ESOP would not remain open." FAC ¶ 81. Because increased sales and revenue do not necessarily translate into increased liquid assets, it is not plausible that Defendants would have known with certainty that cash *would* be available to offer a lump-sum distribution in the future, and Balsley cannot dispute that it was true that cash *may* not be available. As a result, the statement that cash may not be available in the future is not actionable here, and the Court GRANTS Defendants' motion to dismiss this claim.

The second alleged misrepresentation, however, is actionable. The parties agree that the terms of the Plan allow the Trustees to determine whether to offer a lump-sum distribution each year. Consequently, the Trustees might or might not have decided to make another lump-sum offer in the future, and it would have been misleading to say that no such offer would be made.[1] As the Ninth Circuit has explained, "[a] person actively misinforms

---

[1] Defendants might argue that Greene represented only that the precise offer – to buy back shares at the amount of the December 31, 2006 valuation – would not remain open indefinitely. However, viewed in a light most favorable to Balsley, the alleged statement

7

by saying that something is true when it is not true. But the person also misinforms by saying that something is true when the person does not know whether it is true or not." *Wayne v. Pac. Bell*, 238 F.3d 1048, 1055 (9th Cir. 2001). In that case, the Ninth Circuit found summary judgment to be improper because there was "evidence in the record that Pacific [the employer-fiduciary] affirmatively represented to its employees that no offer of an improved benefits package would be offered when, in fact, Pacific knew that it would propose such a package to the Union and that there was at least a reasonable probability that some version of the package would ultimately be incorporated into the collective bargaining agreement." *Id.* This case presents a similar circumstance, where Greene is alleged to have told Balsley that the opportunity to obtain a lump-sum distribution would not remain open when, in fact, he knew that the Trustees would consider whether to make another lump-sum offer in the future. The Court therefore DENIES the motion to dismiss the breach of fiduciary duty claim based on this statement against Defendant Greene.

Balsley argues that the Trustee and Delta Star are also liable for Greene's misrepresentations either as co-fiduciaries or because they breached their duty to monitor Greene's actions. However, both of these arguments are unpersuasive. First, a co-fiduciary is liable for another fiduciary's breach only:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). The first amended complaint alleges none of these circumstances with respect to Greene's alleged misrepresentations. Although Balsley does allege that Greene

---

implies that no lump-sum distribution would be available in the future, not only that the specific offer would not remain open.

8

acted on behalf of Delta Star and the Plan, *e.g.*, FAC ¶ 81, he does not allege any facts surrounding this purported delegation of duties. This is insufficient to allege knowing participation in, enablement of, or knowledge of Greene's alleged breach of fiduciary duty by making an affirmative material misrepresentation. Similarly, even if the Court were to find that "acting on behalf of" sufficiently alleged that the Trustees or Delta Star delegated certain duties to Greene, the complaint contains no allegations as to how these Defendants breached any duty to monitor. For example, the regulation cited by Balsley to describe the duty to monitor requires only that "[a]t reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75-8 at Question FR-17. Balsley alleges no facts that make plausible any violation of this obligation, even if the Trustees or Delta Star delegated fiduciary duties to Greene and had a resultant duty to monitor. Consequently, the Court GRANTS the motion to dismiss all claims against the Trustees and Delta Star based on affirmative misrepresentations alleged to have been made by Greene.

Finally, the first amended complaint does not allege that any other Defendant made any specific representations to Balsley. Balsley makes only conclusory allegations that the Trustees and Delta Star made material misrepresentations without identifying the alleged misrepresentations with any particularity. *E.g.*, FAC ¶¶ 78-79. Such allegations are insufficient to comply with the pleading requirements of Federal Rule of Civil Procedure 9(b), and the Court therefore GRANTS Defendants' motion to dismiss based on affirmative misrepresentations made by any Defendant other than Greene.

**CONCLUSION**

For all of the above reasons, Defendants' motion to dismiss the first amended complaint is GRANTED IN PART and DENIED IN PART. The motion is DENIED as to: (1) Balsley's omission claims against Defendants Greene, Trustees of the Delta Star

9

1 Employee Stock Ownership Plan, and Delta Star and (2) Balsley's misrepresentation claim
2 against Defendant Greene based on Greene's alleged statement that the opportunity to obtain
3 a lump-sum distribution would not remain open. The motion is GRANTED in all other
4 respects.

5 Although it is not clear to the Court that any of the deficiencies in Balsley's first
6 amended complaint can be cured by amendment, it is also not clear that they cannot.
7 Accordingly, leave to amend is GRANTED IN PART. Balsley may not seek to amend his
8 complaint to state a claim under § 502(a)(2) or to state a claim against the Plan; having failed
9 to oppose Defendants' arguments on these points, Balsley may not now have a second
10 opportunity to do so. In addition, Balsley may not re-state a claim based on Greene's alleged
11 representation that cash may not be available in the future, as this Court has concluded that a
12 claim based on that representation is not actionable. If Balsley wishes to file an amended
13 complaint that attempts to resolve the other identified deficiencies, he must do so no later
14 than **January 4, 2010.** The Court will entertain a stipulation to extend this deadline for a
15 reasonable period of time if the parties agree that the rulings in this order will facilitate early
16 settlement discussions.

**IT IS SO ORDERED.**

Dated: 12/10/09

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT